UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
RASHAWN CHEESEBORO,

       Petitioner,

-against-

ROBERT CUNNINGHAM, Acting
Superintendent Green Haven Correctional
Facility, et al.,

       Respondents.
----------------------------------------------X

MEMORANDUM, JUDGMENT
& ORDER DENYING PETITION

09CV3263(SLT)(SMG)

TOWNES, U.S.D.J.

Petitioner Rashawn Cheeseboro was convicted by a jury in New York State Supreme Court, Kings County, of Murder in the Second Degree and sentenced to an indeterminant prison term of 23 years to life on April 6, 2006. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. For the reasons set forth below, the petition is denied.

**Facts**

The People's evidence at trial would have permitted a reasonable juror to find as follows:

On December 17, 2004, shortly before 1:00pm, Helen Morell was walking with her five-year old daughter to a restaurant as they passed a group of four men talking on the street corner. (Morell: 97-100, 107, 113-114, 127). Morell and her daughter entered the restaurant and shortly thereafter, her daughter left to buy candy at a nearby store (Morell: 100, 126-127, 130, 137). Shortly thereafter, Morell heard gunshots, went outside and saw Bantu Hicks running in the street carrying only a book bag in his hands. (Morell: 100-02, 104, 107-08, 114, 133, 138-39). She saw petitioner standing on the sidewalk firing a handgun repeatedly at Hicks. (Morell: 100, 104-

1

05, 108-09, 113, 116-17, 133). Hicks dropped to the ground. (Morell: 100, 102, 108, 114). Sergeant Estaban Ortiz and his partner, Officer Beatrice Forbes, were the first police officers on the scene. (Ortiz: 38-43, 76). Hicks was conscious, but unable to speak, and he died after an ambulance took him to the hospital.

Dr. Frede Frederic, an expert in forensic pathology, performed an autopsy on the body of Bantu Hicks on December 18, 2004 (Frederic: 248-49, 271). Dr. Frederic found four gunshot wounds, which she arbitrarily labelled one through four. (Frederic: 254-57). Dr. Frederic testified that gunshot wound #2 was the fatal wound. (Frederic: 257). She stated that the bullet that caused the wound labelled #1 entered Hicks' right upper back, near the shoulder blade. It went through muscle and exited from the right upper arm near the shoulder. Dr. Federic opined at trial that the shooter who inflicted this wound probably fired from behind or to the side of the victim. (Frederic: 251-54).

According to Dr. Frederic, the path of the bullet which caused the fatal wound labelled #2 was from back to front, left to right, and upwards. (Frederic: 256-57). The autopsy revealed that the bullet entered the left side of Hicks' back, travelled through to the left side of the chest, fractured the left 6th rib, penetrated the chest cavity, passed through the left lung, the heart, the aorta and the right lung, fractured the right 4th rib and lodged in the fatty tissue on the right side of the victim's chest. (Frederic: 255-57). Dr. Frederic opined that if Hicks suffered wound #2 while he was running, he would have been able to continue to run for a few steps because the wound would not have caused him to collapse until he had lost approximately one-third of the total volume of his blood. (Frederic: 257).

The bullet that caused gunshot wound #3 entered Hicks' lower left back just above the

buttocks. It followed a path through the left kidney, through the fatty tissue around the bowel, through the abdomen, fractured the left 9th rib, and lodged in the muscle of the left chest. (Frederic: 257-58).

The bullet that caused gunshot wound #4 entered the back of the victim's left arm, passed through to and lodged in the left chest. The path of the bullet was from back to front, left to right and upward. (Frederic: 258-59).

Dr. Frederic observed no soot or stippling around any of the wounds or on Hicks' clothing, which indicated to her that the muzzle of the gun was at least twelve inches away from each wound when the gun discharged. (Frederic: 254-55, 272-75). The cause of death was determined to be gunshot wound to the trunk and extremities with aorta, heart, lung, kidney, and musculoskeletal injuries. (Frederic: 259).

Upon examination of Hicks' clothing and the book bag that accompanied Hicks' body, Dr. Frederic noted what appeared to be several bullet holes in the back of the jacket Hicks was wearing. (Frederic: 263-66, 272). She also noted what appeared to be two bullet holes in the book bag and two bullet holes in a book inside the book bag. (Frederic: 263-64, 266).

Detective James Valenti, an expert in ballistics and miscroscopic composition of ballistic evidence, performed miscroscopic comparison analysis on the shell casings recovered in this case. (Valenti: 192-214). It was his opinion that all seven shell casings were ejected from the same gun. (Valenti: 197-99, 209, 212-13). In addition, Detective Valenti analyzed the copper jacketing and four bullets submitted. He concluded that they were also all fired from the same gun. (Valenti: 199-205, 211-14).

Detective Sean McTighe arrested petitioner on February 2, 2005. Petitioner was placed

3

in a line up at the 73rd Precinct and Helen Morell identified him as the shooter. (Morell: 119-21; McTighe: 332-37). Detective McTighe advised petitioner of his Miranda rights, which petitioner waived. During Detective McTighe's interview of Petitioner, Petitioner initially denied any knowledge of the Hicks homicide. (McTighe: 341). He later stated that he shot Hicks in self-defense (McTighe: 341). Petitioner said that he was outside 131 Belmont Avenue with his girlfriend, when Hicks came out of the building, and an argument ensued. (McTighe: 342, 357). Petitioner stated that Hicks pulled a gun from his book bag; that he and Hicks fought over the gun; that petitioner got possession of the gun by grabbing Hicks's testicles; that Hicks reached into the book bag a second time, leading petitioner to believe that Hicks was reaching for a second gun; and that petitioner then fired eight shots at Hicks. (McTighe: 342-46, 357-58, 360-62). Detective McTighe reduced petitioner's oral statement to writing and petitioner read and signed it. (McTighe: 342-44, 355, 358-60, 363).

Assistant District Attorney Anna-Sigga Nicolazzi subsequently interviewed petitioner on videotape, and the substance of petitioner's videotaped statement was the same as the oral and written statements given to Detective McTighe. (Sigga-Nicolazzi: 312-315; McTighe: 350). Petitioner testified at trial and again presented a story that was substantially the same as his previous statements.

At trial, petitioner admitted that he repeatedly shot at Bantu Hicks with the intent to hit him. (Cheeseboro: 432). He asserted a justification defense, claiming that after he and Hicks had a fight, Hicks took a gun from a backpack and Cheeseboro wrested the gun away. (Cheeseboro: 402-414). Cheeseboro claimed that he fired the first shot at Hicks as Hicks reached for his bag because he thought that Hicks was about to pull out another gun and kill him. (Cheeseboro: 417,

4

420, 432). As Hicks ran away after the first shot, petitioner fired at him six or seven additional times. (Cheeseboro: 420).

At the charge conference, petitioner's counsel asked the court to charge justification (436, 444; A4, A12)[1]. He did not ask the court to charge excessive force.[2] The court granted counsel's request to charge justification, temporary innocent possession, and agreed to charge first-degree manslaughter as a lesser of intentional murder. (436, 448-449; A3, A14-A15).

During summation, Petitioner's counsel argued:

> [T]he medical examiner said that there were four shots that struck Mr. Hicks. Three were not fatal...She also said that she cannot describe which bullet came first, second, third, or fourth. She indicated to you that the order that she gave the bullets in the track wounds were purely arbitrary. Now, I don't have to prove that the fatal bullet was the first one shot. Why? The burden of proof. Can [the prosecutor] disprove that the fatal bullet was the very first shot?

(462; A28).

The prosecutor argued that none of the shots fired by the Petitioner were justified, stating,

> It doesn't matter which of these bullets hit the body first...It doesn't matter. Every single one of these shots was intended to kill him...The bottom line is that at the time of the shooting there was no threat whatsoever to defendant's life...The defendant aimed that loaded handgun at another human being and pulled the trigger seven times. That's not self-defense. That's murder.

(494-495; A60-61)

Following an overnight recess, the jury convicted Cheeseboro of second-degree murder.

---

[1] References beginning with "A" refer to petitioner's appendix.

[2] Excessive force is the principle that prosecution must prove beyond a reasonable doubt that the decedent was killed by an excessive, unjustified deadly force, not an initial use of justified force. CJI 35.15(2)(a).

5

**Direct Appeal**

On direct appeal petitioner challenged his conviction on the ground, *inter alia*, that his trial attorney rendered ineffective assistance of counsel when he failed to object to the court's charge to the jury with respect to the justification defense. The Appellate Division, Second Department, affirmed the trial court's judgment on June 30, 2008. The court determined, *inter alia*, that petitioner was not denied effective assistance of counsel by his attorney's failure to object to the charge. *People v. Cheeseboro*, 52 A.D.3d 526 (N.Y. App. Div. 2008). The Court of Appeals denied leave to appeal on October 28, 2008. *People v. Cheeseboro*, 11 N.Y. 3d 831 (N.Y. 2008).

## Discussion

**Ineffective Assistance of Trial Counsel**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of *habeas corpus* to a state prisoner on a claim that was "adjudicated on the merits in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if the state court decides a case differently than this Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applies clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d. Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, No. 01-2299, 2002 U.S. App. LEXIS 28137 (2d Cir. Aug. 1, 2003) (amended opinion) (district court's habeas decision that relied on precedent from the Court of Appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Torres v. Berbary*, No. 02-2463, 2003 U.S. App. LEXIS

7

16167, at *25 (2d Cir. Aug. 7, 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court stated that a petitioner is entitled to "reasonably effective assistance" of counsel, which in light of all of the circumstances, does not fall "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 687, 690 (1984). Counsel is "strongly presumed" to have rendered effective assistance to his client. *Id.* at 690. Under *Strickland*, a petitioner must demonstrate that he was prejudiced by the performance of his counsel. *Strickland*, 466 U.S. at 692, 694; *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). "The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Furthermore, a petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 689-99 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). A petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 595 U.S. at 699. Whether a state court's decision was unreasonable "must be assessed in light of the record the

court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004).

In the instant case, Petitioner raised a claim of ineffective assistance of trial counsel in his appeal to the Appellate Division, Second Department, which rejected his claim in an order dated June 3, 2008. *People v. Cheeseboro*, 52 A.D.3d 526 (2d Dept. 2008).[3] The state court's rejection of Petitioner's claim of ineffective assistance of trial counsel was an adjudication on the merits within the meaning of the federal habeas statute as amended by AEDPA. *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006), cert. denied, 5549 U.S. 1133 (2007); *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002). For the reasons set forth below, the state court's rejection of the claim of ineffective assistance of trial counsel was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent.

**Petitioner's Claims**

Petitioner claims that counsel was ineffective for failing to object to the trial court's justification charge and for failing to request an additional charge on excessive force. (Pet. at ¶ 12). The Second Circuit has held "that a counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'" *Aparicio v. Artuz*, 269 F.3d 78, 99) (2d Cir. 1998) (quoting *Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir.1998); *see also McKee v. United States*, 167 F.3d 103, 108 (2d Cir.1999). "Conversely, when a trial court's instruction is legally correct as given, the failure to request an additional instruction does

---

[3]The Appellate Division cited to *People v. Baldi*, 54 N.Y.2d 137 (N.Y. Ct. App. 1981) in denying defendant's ineffective assistance of counsel claim. *See Cheeseboro*, 52 A.D.3d at 526. The Second Circuit has held that the *Baldi* standard is not "contrary to" the test of *Strickland v. Washington*, for purposes of 28 U.S.C. Sec. 2254(d)(1). *See Eze v. Senkowski*, 321 F.3d 110, 123-24 (2d Cir. 2003).

not constitute deficient performance." *Id.* (citing *United States v. Brooks*, 82 F.3d 50, 54 (2d Cir.1996); *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.1992)).

New York Penal Law Sec. 35.15 outlines the law on justification with regard to the use of physical force. A person may use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force against him by another person. N.Y. Penal Law Sec. 35.15(1). A person may use deadly physical force upon another person only where he reasonably believes that such other person is using or is about to use deadly physical force, and he either cannot safely retreat or he does not have a duty to retreat under the law. N.Y. Penal Law Sec. 35.15(2)(a).

A justification charge under New York law must properly instruct the jury on how to determine whether the defendant was the initial aggressor and how to determine whether defendant's conduct was reasonable. *See People v. Petty*, 7 N.Y.3d 277, 285, 819 N.Y.S.2d 684, 689 (N.Y. App. Ct. 2006) (trier of fact must determine whether defendant was the initial aggressor and whether defendant's conduct was reasonable). A justification charge must also instruct the jury to consider both objective and subjective factors in determining whether defendant's belief was reasonable. *See People v. Wesley*, 76 N.Y.2d 555, 559; 561 N.Y.S.2d 707, 709-10 (N.Y. App. Ct. 1990) (jury must determine whether defendant actually believed that deadly physical force was necessary and then assess the reasonableness of that belief). Additionally, a justification charge in New York must instruct the jury that the government bears the burden of proving beyond a reasonable doubt that defendant's conduct was not justified. *See People v. Umali*, 10 N.Y.3d 417, 425; 859 N.Y.S.2d 104, 109 (N.Y. App. Ct. 2008), cert. denied,

129 S. Ct. 1595 (2009).

The trial court's justification charge, viewed in its entirety, was correct under New York law. The court instructed the jury that "a person may use deadly physical force upon another individual when and to the extent that he reasonably believes to be the use or imminent use of deadly physical force by such individual." (511, 543). The court defined the term "deadly physical force" and outlined a two-part test for determining whether defendant "reasonably believed" that he was confronted with a deadly physical threat. (511-12, 544-45). The court instructed the jury that the defendant must have actually believed that Hicks was using or about to use deadly physical force against him and that the use of deadly physical force was necessary to defend against the threat (512-123, 544-45). Second, the court instructed the jury that defendant's beliefs must have been those held by a reasonable person in defendant's position. (512-13, 544-45).

The court then explained that defendant would not be justified in the use of deadly physical force if he was the initial aggressor, unless he had withdrawn from the encounter and effectively communicate such withdrawal to Hicks, but Hicks persisted in continuing the incident by use or threatened imminent use of deadly physical force. (513-14, 545-46). The court further instructed the jury that a person who reasonably believes that another is about to use deadly physical force upon him need not wait until he is struck or wounded. (514, 546). The court also instructed the jury that defendant had a duty to retreat if he could have done so in complete safety. (514, 546-47). Lastly, the court instructed the jury that it was the prosecution's burden to prove beyond a reasonable doubt that defendant's use of deadly physical force was not justified and that the lack of justification was an element of second-degree murder. (511, 514-15, 517,

11

543, 547).

The trial court's charge on justification repeated the pattern jury instructions on justification that were in effect at the time of defendant's trial. *See* CJI2d[NY] Penal Law Sec. 35.15; *see also People v. Richardson*, 294 A.D.2d 379, 380 (2d Dep't 2002) (upholding justification charge when it "mirrored the model charge"); *People v. Bernard*, 222 A.D.2d 599, 599 (2d Dep't 1995) (upholding the justification charge that followed pattern instructions "nearly verbatim"). Moreover, the trial court's instruction did not contain "clear and previously identified errors." *Aparicio v. Artuz*, 296 F.3d at 99. Therefore, defense counsel's failure to object did not constitute a violation under *Strickland*.

Defendant's argument that the jury was given no choice but to find him guilty of murder under the instruction is unavailing. Defendant cites to cases to support the proposition that where counsel fails to request an instruction on defendant's only defense, his performance is ineffective (*Pirtle v. Morgan*, 313 F.3d 1160, 1162 (9th Cir. 2002); *Unites States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996)), however, in this case, counsel did request an instruction on the defense of justification. The government argued that the defendant shot the unarmed victim in the back four times as he ran away after an altercation. Defense counsel argued that defendant shot Hicks in self-defense after he won possession of Hick's gun in a tussle and after Hicks appeared to be reaching for a second weapon after the confrontation. The charge given by the court allowed the jury to properly evaluate the justification defense under both theories.

The court's justification instruction was impartial, unlike the excessive force instruction advocated by defendant. Such an instruction would have indicated to the jury that it could only find defendant guilty if the government proved beyond a reasonable doubt that the first shot fired

12

by defendant was unjustified and fatal. (Defendant's Petition at ¶ 12; Defendant's Brief at 33). However, under the government's theory, all shots were unjustified, thus it did not matter which was the fatal shot. *See People v. Berk*, 88 N.Y.2d 257, 267 (N.Y. App. Ct. 1996) (upholding the trial court's refusal to instruct the jury that appellant had no duty to retreat, as there was a factual dispute as to whether the premises in which appellant shot the victim was appellant's dwelling). Therefore, the trial court acted within its discretion in failing to provide the additional instruction.

Moreover, defendant has not shown that he suffered prejudice as a result of defense counsel's failure to object to the court's justification charge or to request an additional instruction on excessive force. The government produced ample evidence of defendant's guilt, including evidence that the victim had been shot four times in the back; therefore, it is not reasonably probable that the result of defendant's trial would have been different. Defendant admitted that he shot and killed Hicks, making his only defense justification. Witness Helen Morell testified to seeing defendant fire a handgun repeatedly into Hicks as he ran away from petitioner. All of the recovered bullets and shell casings came from a single gun, and no second gun was ever found. The defendant testified, but changed his story on the stand as to exactly where he was located prior to the alleged confrontation with Hicks, thus making him a potentially incredible witness to the jury. Therefore, defendant has failed to establish a claim for ineffective assistance of counsel and has failed to show that he was prejudiced by the trial court's instruction.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* is denied in its entirety. A certificate of appealability shall not be issued because Petitioner has not made a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Sandra L. Townes

/ SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: March 30, 2012

Brooklyn, New York